UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

NIKE, INC., ADIDAS-SALOMON A.G.,
ADIDAS INTERNATIONAL, B.V., and
ADIDAS AMERICA, INC.,

                    Plaintiffs,

        -against-                                    00 Civ. 8179 (KMW) (RLE)
                                                     ORDER
TOP BRAND COMPANY LTD., ROSSON
SPORT, INC., MHK PRODUCTS, INC.,
GLOBAL SURPLUS, INC., GLOWERTH
INTERNATIONAL TRADING LTD. a/k/a
GLOWOERTH INTERNATIONAL TRADING
LTD., TRANSFUND CAPITAL, LCC,
HANOCH ROSNER a/k/a HANK ROSNER
a/k/a IKE ROSNER a/k/a IKEY ROSNER,
JAY ENIS, VINCENT MILITANO, MARK
SAHAYA, and MARK STEVENS COMPANY,

                    Defendants.

------------------------------------X

WOOD, U.S.D.J.:

        Plaintiffs Nike, Inc. ("Nike"), Adidas-Salomon A.G., Adidas

International, B.V., and Adidas America, Inc. (collectively,

"Adidas") bring this action against Defendants MHK Products, Inc.

("MHK"), Transfund Capital, LLC ("Transfund"), and the President

of MHK and Transfund, Jay Enis ("Enis") (collectively, the "Enis

Defendants"); Rosson Sport, Inc. ("Rosson"), Top Brand Company

Ltd. ("Top Brand"), Global Surplus, Inc. ("Global"), the

President of Global, Vincent Militano ("Militano"), and the

President of Rosson Sport and Top Brand, Hanoch Rosner ("Rosner")

(collectively, the "Rosner Defendants"); Mark Stevens Company,

and its President, Mark Sahaya ("Sahaya") (collectively, the

"Sahaya Defendants"); and Glowerth International Trading Ltd.,
for trademark counterfeiting and infringement in violation of 15
U.S.C. §§ 1114 and 1117(b)-(c), false designation of origin and
trade dress infringement in violation of 15 U.S.C. § 1125(a),
trademark dilution in violation of 15 U.S.C. §1125(c), common law
trademark infringement, common law unfair competition, and
violation of New York General Business Law § 360-1. See Am.
Compl., 6-24.

On November 17, 2000, this Court issued a preliminary
injunction enjoining Defendants from, inter alia, "manufacturing,
distributing, offering for sale, selling, advertising, promoting
or otherwise disposing of" unauthorized reproductions or copies
of goods bearing Nike and Adidas trademarks. See Order for
Preliminary Injunction, Expedited Discovery and Impoundment, 00
Civ. 8179 (KMW)(S.D.N.Y. Nov. 17, 2000), Doc. 5, at 4-5.
Plaintiffs now move (1) for summary judgment on all their claims
against the Enis and Rosner Defendants, and (2) for summary
judgment on the issue of liability on their claims against the
Sahaya Defendants.

For the reasons set forth below, the Court grants default
judgment against Defendants MHK and Transfund on all of
Plaintiffs' claims, grants summary judgment against Defendant
Enis and the Rosner Defendants on all of Plaintiffs' claims, and
grants summary judgment on the issue of liability against the

Sahaya Defendants on all claims except Plaintiffs' common law infringement claim.

## I.  Background

Plaintiffs Nike and Adidas manufacture, advertise, and sell sportswear, apparel, footwear, and sporting goods under various trademarks that are distinctive and recognized throughout the world.  Pls.' Statement of Facts Pursuant to Local Rule 56.1 ("Pls.' 56.1 Statement"), ¶¶ 1-2, 4-6, 8.[1]

Plaintiffs allege (1) that the Enis Defendants manufactured, sourced, distributed, and sold over 2 million counterfeit Nike tee shirts and 500,000 counterfeit Adidas tee shirts; (2) that the Rosner Defendants purchased and re-sold approximately 1.2 million counterfeit Nike tee shirts, over 200,000 counterfeit

---

[1]The Nike trademarks at issue are: NIKE (Registration Nos. 1,277,066 and 1,945,654), NIKE/SWOOSH DESIGN (Registration No. 1,237,469), and the SWOOSH DESIGN (Registration No. 1,284,305). Pls' 56.1 Statement, ¶ 3.  The Adidas trademarks at issue are: the word mark "adidas" for sports balls (Registration No. 1,050,759), the word mark TANGO for sports balls (Registration No. 1,128,704), the TANGO icon trademark for soccer balls (Registration No. 1,232,037), balls featuring the TANGO icon in repeating patterns (Registration Nos. 1,212,519 and 1,310,210), the PERFORMANCE BAR LOGO trademark for sports and leisure wear and balls (Registration No. 2,411,802), the word mark "adidias" for shoes and sportwear (Registration Nos. 891,222 and 1,300,627), the PERFORMANCE BAR LOGO trademark for sports and leisure wear (Registration No. 2,179,796), the THREE STRIPES DESIGN trademark for sports, leisure, and footwear (Registration Nos. 870,136, 2,016,963, 2,058,619, 2,278,591, 2,284,308, and 2,278,589), and the word mark "adidas" used in conjunction with the PERFORMANCE BAR LOGO for sports and leisure wear (Registration No. 1.931.827).  Id. at  ¶ 7.

Adidas tee shirts, 22,554 counterfeit Adidas sneakers, and 50,000 counterfeit Adidas soccer balls; and (3) that the Sahaya Defendants purchased and re-sold at least 80,000 counterfeit Nike tee shirts, and arranged for Asian manufacturers to produce approximately 3.8 million units of counterfeit Adidas merchandise for sale in the United States.  Pls.' Mem. in Supp. of Mot. for Partial Summ. J. ("Pls.' Mem."), 4-5, 12, 14, 17.

**A.    Rosner Defendants**

The Rosner Defendants have failed to oppose Plaintiffs' Local Rule 56.1 Statement and motion for partial summary judgment.  See L.R. 56.1(b) (requiring party opposing summary judgment to respond to movant's 56.1 Statement, highlighting those material facts about which it contends there exists a genuine issue to be tried).  The facts set forth in the moving party's 56.1 statement "will be deemed to be admitted for purposes of the motion unless specifically controverted" by the opposing party's statement.  Holtz v. Rockefeller & Co., 258 F.3d 62, 72 (2d Cir. 2001) (quoting L.R. 56.1(c)); accord Philip Morris USA Inc., v. Felizardo, 03 Civ. 5891 (HB), 2004 U.S. Dist. LEXIS 11154, *14 (S.D.N.Y. June 18, 2004) (holding that where plaintiffs "failed to submit anything even remotely resembling a 56.1 Opposition...the Court may deem admitted all of the material facts presented in [the movant's] 56.1 Statement.").

4

However, before accepting Plaintiffs' recitation of the material facts in regard to the Rosner Defendants, the Court has the discretion to ensure that Plaintiffs' presentation is supported by the record. <u>Holtz</u>, 258 F.3d at 73; <u>Philip Morris</u>, 2004 U.S. Dist. LEXIS 11154, at *13-14. The Court has performed such a review, and finds that Plaintiffs' allegations in regard to the Rosner Defendants are adequately supported. <u>See, e.g.</u>, Decl. of David W. Simpson ("Simpson Decl."), ¶¶ 8-14; Decl. of Kevin Dougherty ("Dougherty Decl."), ¶¶ 4-12; Decl. of Michael K. Heilbronner ("Heilbronner Decl."), ¶¶ 12, 14.

Defendant Rosner claimed in his deposition that Rosson was Nike's authorized licensee in Israel, that Rosner himself was merely a broker for Rosson, and that he had never sold any Adidas apparel. Pls.' 56.1 Statement, ¶¶ 50, 52, 73; Dep. of Hanoch Rosner ("Rosner Dep."), in Decl. of Ira S. Sacks ("Sacks Decl."), Ex. 14, at 39-41, 44, 51-60, 191-92, 215-20; <u>see also</u> Dep. of Vincent Militano ("Militano Dep."), in Sacks Decl., Ex. 16, at 100. In addition, Defendants Rosner and Militano claimed that the Adidas TANGO Stadium soccer balls at issue were manufactured pursuant to authorization from Adidas Israel. Pls.' 56.1 Statement, ¶ 73; Rosner Dep., at 169-74; Militano Dep., at 99-101, 107-08. However, the Rosner Defendants have failed to submit any documentary evidence to substantiate these claims, which are contrary to the record before the Court.

It is undisputed that Nike's authorized licensee in Israel during the relevant time period was Ruson, Ltd., not Rosson. Pls.' 56.1 Statement, ¶ 51; Simpson Decl., ¶ 12.  In addition, David W. Simpson ("Simpson"), the Director for Security for Nike, and Michael K. Heilbronner ("Heilbronner"), Associate Counsel of Adidas, have confirmed that none of the Rosner Defendants were authorized to use the Nike and Adidas trademarks.  Pls.' 56.1 Statement, ¶ 48; Simpson Decl., ¶ 9; Heilbronner Decl., ¶ 12. See also Pls.' 56.1 Statement, ¶ 60; Simpson Decl., ¶¶ 11-13, Exs. A-B (evidence supporting Plaintiffs' allegation that invoices purporting to be from Nike, which Rosson supplied, were forgeries).  Heilbronner and Tricia Turner, the Product Line Manager for Agron, Inc., have also confirmed that Agron, Inc., a company in California, is the exclusive sublicensee of Adidas TANGO Stadium soccer balls.  Heilbronner Decl., ¶ 14; Decl. of Tricia Turner, ¶ 1, in Supp. Decl. of Ira A. Sacks, Ex. 1.

Therefore, the Court deems admitted Plaintiffs' allegations that "the Rosner Defendants knowingly and intentionally sold counterfeit product[s] purchased from the Enis Defendants," and "knowingly manufactured and sold counterfeit adidas TANGO Stadium soccer balls."  Pls.' Mem., 13-16.

**B.   Enis and Sahaya Defendants**

The Enis and Sahaya Defendants do not deny that they dealt in counterfeit Nike and Adidas goods.  Specifically, the Sahaya

Defendants admit that they "sold or brokered" 2,107,900 units of counterfeit goods (including shorts, shirts, and footwear), for a total profit of $1,686,150. Sahaya Defs.' Mem. of Law in Opp'n to Pls.' Mot. ("Sahaya Mem."), 2; Chart I, Decl. of Mark Sahaya in Opp'n to Pls.' Mot. ("Sahaya Decl."), Ex. 2. In addition, it is undisputed that the Enis Defendants asked Volunteer Knit Apparel ("Volunteer") and The Owenby Company ("Owenby") to manufacture blank tee shirts adhering to Nike and Adidas specifications, and to sew either Nike or Adidas labels onto the garments; that Sandora Industries ("Sandora") produced over 1.5 million Nike labels, over 1 million Nike hang tags, and over 600,000 Adidas hang-tags for the Enis Defendants; and that Defendant Enis screen-printed tee shirts with Nike or Adidas trademarks and affixed hang-tags and UPC labels onto the garments at his facility. Pls.' 56.1 Statement, ¶¶ 14, 32, 34; see L.R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the [movant's] statement...will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). Furthermore, Simpson and Heilbronner have confirmed that the Enis Defendants, Volunteer, Owenby, and Sandora were not authorized to use the Nike and Adidas trademarks. Pls.' 56.1 Statement, ¶ 48; Simpson Decl., ¶¶ 6-7; Heilbronner Decl., ¶¶ 9-10.

However, the Enis and Sahaya Defendants contend that at the time of the transactions, they believed the goods were authorized by Plaintiffs and/or their legitimate licensees.  See, e.g., Enis Defs.' Statement of Facts Pursuant to Local Rule 56.1, ¶¶ 1-2; Sahaya Defs.' Statement of Facts Pursuant to Local Rule 56.1, ¶ 1; Enis Defs.' Mem. of Law in Opp'n to Pls.' Mot. ("Enis Mem."), 1; Sahaya Mem., 1-2.  In addition, the Enis and Sahaya Defendants contend that there are genuine disputes as to the quantity of counterfeit goods involved in their transactions, and the amount of profit they derived from these goods.  Enis Mem., 3; Sahaya Mem., 4.[2]


## II.  Default Judgment against Certain Defendants

As a preliminary matter, the Court grants default judgment against corporate Defendants MHK and Transfund.  Corporations cannot appear pro se.  See Rowland v. California Men's Colony,

_____

[2]Contrary to the Sahaya Defendants' admission, supra at 7, Plaintiffs allege that the Sahaya Defendants made a profit of at least $2,400,000 from their alleged sale of over 4.5 million units of counterfeit goods.  Pls.' Mem., 16-18.

The Enis Defendants have not clearly identified the quantity of counterfeit goods they sold, or the profit that they made from these sales.  In any event, pursuant to an order issued by Magistrate Judge Ronald Ellis on July 7, 2003, the Enis Defendants are "precluded from introducing evidence on the issue of damages," and Plaintiffs are to be given "all reasonable inferences against the Enis Defendants on the issue of damages." Opinion and Order, 00 Civ. 8179 (RLE) (S.D.N.Y. July 7, 2003), Doc. 33, at 30 (imposing sanctions upon the Enis Defendants for violating the Federal Rules of Civil Procedure and 28 U.S.C. § 1927).

506 U.S. 194, 202 (1993)("28 U.S.C. § 1654, providing that
'parties may plead and conduct their own cases personally or by
counsel,' does not allow corporations, partnerships, or
associations to appear in federal court otherwise than through a
licensed attorney"); accord Dow Chem. Pac. Ltd. v. Rascator
Maritime S.A., 782 F.2d 329, 336 (2d Cir. 1986).  Thus, on
October 14, 2003, when Magistrate Judge Ronald Ellis relieved the
attorneys representing corporate Defendants MHK and Transfund, he
gave MHK and Transfund forty days to either obtain new counsel or
face default judgment.

   Because MHK and Transfund have failed to obtain new counsel,
the Court grants default judgment against them, finding them
liable on all of Plaintiffs' claims.  See Bambu Sales v. Ozak
Trading, 58 F.3d 849, 854 (2d Cir. 1995) ("There is no question
that a default judgment establishes liability.").


## III. Discussion

## A.    Standard of Review on a Motion for Summary Judgment

   "The principles governing the grant of summary judgment are
the same in trademark as in other actions."  Fendi S.A.S. Di
Paola Fendi E Sorelle v. Cosmetic World, Ltd., 642 F. Supp. 1143,
1145 (S.D.N.Y. 1986).  Summary judgment is properly granted where
the "pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In considering the motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The substantive law governing a case will identify those facts that are material, and only disputes over relevant or necessary facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); accord Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam) ("The mere existence of factual issues - where those issues are not material to the claims before the court - will not suffice....").

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for the jury to return a verdict for that party."  Anderson, 477 U.S. at 249.  In a trademark action like the present case, The Second Circuit has held that summary judgment is appropriate "where the undisputed evidence would lead only to one conclusion as to whether

confusion is likely." Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996).

**B.    Trademark Counterfeiting and Infringment, False Designation of Origin, and Trade Dress Infringement under the Lanham Act**

The Lanham Act provides in relevant part that:

Any person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive...shall be liable in a civil action by the registrant for the remedies hereinafter provided.  15 U.S.C. § 1114(1)(a).

Any person who, on or in connection with any goods or services,...uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,...shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.  15 U.S.C. § 1125(a).

In order for Plaintiffs to make a prima facie case on their Lanham Act claims – of trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114, and false designation of origin and trade dress infringement in violation of 15 U.S.C. § 1125(a) – they must demonstrate (1) that they had a protectible legal

11

interest in the marks, and (2) that Defendants' unauthorized commercial use of the marks was likely to confuse consumers as to the source of the goods. See Virgin Enters. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) ("A claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two-prong test...[that] looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods); accord Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 870-72 (2d Cir. 1986); Cadbury Beverages, 73 F.3d at 477.

(a)  Protectible Interest

It is undisputed that the Nike and Adidas trademarks at issue are registered with the United States Patent and Trademark Office, and, with the exception of three marks,[3] have achieved incontestable status through "continuous use for five consecutive years." 15 U.S.C. § 1065; see Pls.' 56.1 Statement, ¶¶ 3-4, 7-8. "[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection." Lois, 799 F.2d at 871; see also 15 U.S.C. § 1115(b) ("To the extent that the right

---

[3]Adidas' Registration Nos. 2,278,591, 2,284,308, and 2,411,802 have not yet achieved incontestable status pursuant to 15 U.S.C. § 1065.

to use the registered mark has become incontestable under section 15 [15 U.S.C. § 1065], the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."). Thus, Plaintiffs have demonstrated a highly protectible interest under the Lanham Act in their respective trademarks.

(b)  Likelihood of Confusion

In assessing the likelihood of confusion resulting from unauthorized commercial use of a mark, courts in the Second Circuit have applied the multi-factor "Polaroid test" set forth by Judge Friendly in Polaroid Corp. v. Polaroid Electronics Corp. 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820 (1961). See Cadbury Beverages, 73 F.3d at 477 ("In deciding whether the plaintiff has established likelihood of confusion, the law of this Circuit requires that courts consider the eight factors elaborated in Polaroid"); Lois Sportswear, 799 F.2d at 871 ("wholeheartedly" agreeing that the Polaroid test provides the controlling law on the issue of likelihood of confusion).

The Polaroid test calls for the balancing of the following non-exhaustive list of variables: "the strength of [plaintiff's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner

13

will bridge the gap, actual confusion,...the reciprocal of
defendant's good faith in adopting its own mark, the quality of
defendant's product, and the sophistication of the buyers."
Polaroid, 287 F.2d at 495.

The Polaroid factors, when applied to the facts of the
instant case, weigh heavily in Plaintiffs' favor.  It is
uncontested that the products Defendants manufactured,
distributed, and/or sold bore marks that were virtually identical
to the Nike and Adidas trademarks.  In addition, Defendants have
not challenged Plaintiffs' contentions regarding the strength of
their respective marks - i.e., that Plaintiffs have sold
"billions of dollars of merchandise under [the] various
trademarks," and that the marks are "distinctive and are
recognized as famous marks in the United States and throughout
the world."  Pls.' 56.1 Statement, ¶¶ 2, 4, 6, 8.  The undisputed
evidence undeniably leads to the conclusion that Defendants' use
of the marks was likely to cause consumer confusion.[4]

Upon the established facts, Plaintiffs are entitled to

---

[4]It is unnecessary to perform a step-by-step examination of
each Polaroid factor in cases involving counterfeit marks,
because "counterfeit marks are inherently confusing."  Morris,
2004 U.S. Dist. LEXIS 11154, at *18; accord Gucci America, Inc.,
v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y.
2003) ("counterfeits, by their very nature, are confusing").

judgment against Defendants,[5] as a matter of law, on the issues of liability on Plaintiffs' Lanham Act claims.

## C. **Willfulness**

The Court has already determined that the Rosner Defendants' infringement of Plaintiffs' trademarks was willful. <u>See</u> <u>supra</u>, at 6. Plaintiffs do not move for summary judgment against the Sahaya Defendants on the issue of willfulness, because the parties agree that there are material questions of fact as to whether the Sahaya Defendants acted willfully. <u>See</u> Pls.' Mem., 1. Thus, the only willfulness issue that the Court presently needs to address is whether or not the Enis Defendants willfully infringed Plaintiffs' trademarks.[6]

"The standard for willfulness is 'whether the defendant had knowledge that [his] conduct represented infringement or perhaps

---

[5]Even though some Defendants might not have been involved in the manufacture or the affixing of the mark to the infringing products, their purchase and sale of the products constituted "sufficient 'use' [to render them] liable for the results of such infringement and [any] claimed lack of knowledge of [their] supplier's infringement, even if true, provides no defense." <u>El Greco Leather Products Company, Inc. v. Shoe World, Inc.</u>, 806 F.2d 392, 396 (2d Cir. 1986), <u>cert. denied</u>, U.S. , 108 S. Ct. 71 (1987), citing, <u>inter alia</u>, <u>De Acosta v. Brown</u>, 146 F.2d 408, 410-12 (2d Cir. 1944), <u>cert. denied</u>, 325 U.S. 862 (1945).

[6]The Court notes that Defendant Enis's Declaration in Opposition to the instant motion states that "Plaintiff's Motion does not seek a determination of whether the conduct of 'Enis' defendants was willful or not willful." Decl. of Jay Enis in Opp'n to Pls.' Mot., at 2, ¶ 2. This is inaccurate, because Plaintiffs are moving for summary judgment against the Enis Defendants on the issue of willfulness.

recklessly disregarded the possibility.'" Kepner-Tregoe, Inc. v.
Vroom, 186 F.3d 283, 288 (2d Cir. 1999) (quoting Twin Peaks
Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1382 (2d
Cir. 1993)).  The record in this case supports a finding that the
Enis Defendants' conduct was willful.

Federal Rule of Civil Procedure 56(e) states: "When a motion
for summary judgment is made and supported as provided in this
rule, an adverse party may not rest upon mere allegations or
denials of the adverse party's pleadings, but the adverse party's
response, by affidavits or as otherwise provided in this rule,
must set forth specific facts showing that there is a genuine
issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).  See
also Celotex, 477 U.S. at 324 ("Rule 56(e)...requires the
nonmoving party to go beyond pleadings and by her own affidavits,
or by the 'depositions, answers to interrogatories, and
admissions on file,' designate 'specific facts showing that there
is a genuine issue of trial.'").  Thus, the Supreme Court has
concluded that "there is no issue for trial unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party," and such evidence must be
"significantly probative."  Anderson, 477 U.S. at 249 (emphasis
added).

Plaintiffs have supported their motion for summary judgment
against the Enis Defendants on the issue of willfulness, by

16

citing to admissions made by Defendant Enis during his deposition testimony. See Pls.' Reply, 3-4. In contrast, the Enis Defendants have failed to provide any probative evidence in support of their denial of willfulness. As Plaintiffs point out, although Defendant Enis states that he believed he was dealing with authorized licensees, he has failed to "identify the purported licensees;...identify any basis for [this] supposed belief;...refer to a single conversation with the supposed licensees;...identify any steps the Enis Defendants took to verify that their alleged 'client' was an authorized licensee of Nike or Adidas;...attach a single document to, from or relating to the supposed licensees; and...provide any basis to contradict the detailed showing by Plaintiffs that the Enis Defendants knowingly, willfully and/or with willful blindness sold millions of counterfeit adidias and Nike products." Pls.' Mem. in Reply ("Pls.' Reply"), 2; see Decl. of Jay Enis in Opp'n to Pls.' Mot., at 2-4. See also Celotex 477 U.S. at 325 ("the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case"). In sum, the Enis Defendants have provided no factual support for their position.

"Mere conclusory allegations...will not avail a party resisting summary judgment." Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996). Thus, the Court grants summary

judgment against the Enis Defendants on the issue of willfulness.
See Bambu Sales, 58 F.3d at 854 (holding that summary judgment
against defendant on the issue of defendant's willfulness was
appropriate where, inter alia, defendant took no steps to verify
authenticity of infringing product, never asked distributor if
its distribution was authorized, and never asked where
distributor got the product).

D.   **Common Law Trademark Infringement and Unfair Competition**

   (a)   Common Law Trademark Infringement

   Plaintiffs' claim of common law trademark infringement
requires them to meet the same elements as their Lanham Act
claims, with a similar emphasis on the likelihood of confusion.
See Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d
704, 708 (2d Cir. 1982) ("The heart of a successful claim based
upon...the Lanham Act, 15 U.S.C. §§ 1141(1) and 1125(a), and
common law trademark infringement is the showing of likelihood of
confusion as to the source or sponsorship of defendant's
products.").

   As discussed above, Plaintiffs have made a showing that
Defendants' unauthorized commercial use of Plaintiffs' registered
marks was likely to cause consumer confusion.  Supra, at 13-14.
Thus, the Court grants summary judgment against all Defendants on
the issue of liability on Plaintiffs' common law trademark
infringement claim.  See Morris, 2004 U.S. Dist. LEXIS 11154 at

*21 (holding that a plaintiff who "has established liability under the Lanham Act...has also established [defendant's] liability under the common law of trademark infringement.").

(b)  Common Law Unfair Competition

To prevail on their common law unfair competition claim, Plaintiffs must "couple [their] evidence supporting liability under the Lanham Act with additional evidence demonstrating [Defendants'] bad faith."  Id. at *22; accord Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another....  Central to this notion is some element of bad faith.") (citations omitted).

There is a presumption that a defendant who willfully copied a plaintiff's mark acted in bad faith.  See Warner Bros., Inc. v. American Broadcasting Cos., 720 F.2d 231, 246-247 (2d Cir. 1983) ("evidence of intentional copying raises a presumption that a second comer intended to create a confusing similarity of appearance and succeeded"); Centaur Communications, Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1228 (2d Cir. 1987) ("awareness can give rise to an inference of bad faith").

Thus, the Court grants summary judgment on the issue of liability under common law unfair competition against the Enis and Rosner Defendants, who were willful in their infringements.

See <u>supra</u>, at 6, 15-18.  The Court denies summary judgment on this claim as to the Sahaya Defendants, because there is a genuine dispute as to whether or not they acted willfully.

**E.    Federal Trademark Dilution Claim**

The Federal Trademark Dilution Act of 1995 (FTDA) states:

> The owner of a famous trademark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark....  15 U.S.C. § 1125(c).

The statute "unambiguously requires a showing of actual dilution," which it defines as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of – (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception."  <u>Moseley v. V Secret Catalogue</u>, 537 U.S. 418, 433 (U.S. 2003); 15 U.S.C. § 1127.

There are five elements that must be established to prevail on a federal dilution claim: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark."  <u>Nabisco, Inc. v. PF</u>

20

Brands, Inc., 191 F.3d 208, 215 (2d Cir. 1999), overruled in part by Moseley, 537 U.S. at 436. "Because a famous mark can be protected under the FTDA without a showing of confusion, 'the standard for fame and distinctiveness required to obtain anti-dilution protection is more rigorous than that required to seek infringement protection.'...[T]he plaintiff must demonstrate that the mark is inherently distinctive to prevail under the FTDA." Malletier v. Dooney & Bourke, Inc., 340 F. Supp. 2d 415, 435 (S.D.N.Y. 2004) (citing Empresa Cubana Del Tabaco v. Culbro Corp., 97 Civ. 8399 (RWS), 2004 U.S. Dist. LEXIS 4935 (S.D.N.Y. March 29, 2004); N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC, 293 F.3d 550 (2d Cir. 2002)).

It is undisputed that Plaintiffs' trademarks are famous and distinctive, that Defendants' use of them was a "commercial use in commerce," and that Defendants' use began after Plaintiffs' marks had become famous. Furthermore, Defendants' use of Plaintiffs' famous marks did lessen the capacity of the marks "to identify and distinguish goods or services." Thus, the Court grants summary judgment against all Defendants on Plaintiffs' federal dilution claim.

**F.    State Dilution Claim**

New York General Business Law § 360-l states:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be

> a ground for injunctive relief in cases of infringement of a
> mark registered or not registered or in cases of unfair
> competition, notwithstanding the absence of competition
> between the parties or the absence of confusion as to the
> source of goods or services.  N.Y. C.L.S. Gen. Bus. § 360-l
> (2005).

Dilution claims brought under New York law differ from those premised on the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c), in at least three respects: (1) to prevail on a state law dilution claim, a plaintiff need only show a _likelihood_ of dilution; (2) New York law "accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive"; and (3) dilution under New York law can involve either blurring or tarnishment.[7] N.Y. Stock Exch., 293 F.3d at 557-558.

Thus, it is easier for Plaintiffs to establish their dilution claim under the state law standards than to meet the requirements under the FTDA.  For the reasons detailed in the

---

[7]Under N.Y. Gen. Bus. Law § 360-l, blurring occurs "where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." Deere & Co. v. MTD Prods., 41 F.3d 39, 43 (2d Cir. 1994).  Tarnishment occurs, inter alia, where a trademark is "linked to products of shoddy quality," with the result that "the trademark's reputation and commercial value might be diminished because the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods, or because the defendant's use reduces the trademark's reputation and standing in the eyes of consumers as a wholesome identifier of the owner's products or services." Id.

above analysis of Plaintiffs' federal dilution claim, the Court grants summary judgment against all Defendants on Plaintiffs' state law dilution claim. See supra, at 20-21.

## G.  Remedies[8]

### (a)  Profits under 15 U.S.C. § 1117(a)

Plaintiffs contend that they are entitled to recapture profits from all Defendants with respect to their counterfeiting and infringement claims, regardless of whether or not they show that the Defendants acted willfully, on the ground that willfulness is not a prerequisite to recovery under the Lanham Act.  Although the Court agrees that willfulness is not a prerequisite to recovery of profits for violations under Section 1125(a), it is a factor that must be taken into consideration.

---

[8]The Court need not convert its November 17, 2000 preliminary injunction into a permanent injunction, because there is no "cognizable danger of recurrent violation." Hard Rock Café Int'l (USA) Inc. v. Morton, 97 Civ. 9483 (RPP), 1999 U.S. Dist. LEXIS 13760, *14 (S.D.N.Y. Sept. 9, 1999) ("Injunctive relief may not be appropriate where a party has voluntarily ceased its illegal conduct and 'there is no reasonable expectation that the wrong will be repeated.'") (quoting United States v. W. T. Grant Co., 345 U.S. 629, 633 (U.S. 1953)); accord A.V. by Versace, Inc. v. Gianni Versace S.p.A., 96 Civ. 9721 (PKL)(THK), 2005 U.S. Dist. LEXIS 925, *16 (S.D.N.Y. Jan. 24, 2005) ("In the realm of trademark infringement and unfair competition, 'permanent injunctive relief will be granted only upon proof of the likelihood that purchasers of the product may be misled in the future.'") (citing Collins v. Aztar Corp., No. 99 Civ. 7912, 2000 U.S. App. LEXIS 4484, at *6 (2d Cir. Mar. 20, 2000)).

At issue is the effect that the Trademark Amendments Act of 1999 had on the Lanham Act's provision on recovery for violations.  As amended, 15 U.S.C. § 1117 reads in relevant part:

> Profits; damages and costs; attorney fees.  When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a <u>violation</u> under <u>section 1125(a)</u> or (d) of this title, or a <u>willful violation</u> under <u>section 1125(c)</u> of this title, shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  15 U.S.C. § 1117(a) (emphasis added).

The 1999 amendment specifically added the word "willful" in reference to a violation under section 1125(c) of the Act, but not in reference to a violation under section 1125(a) of the Act. <u>See</u> Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 219 (1999) ("[T]he Trademark Act of 1946 (15 U.S.C. 1117(a)) is amended in the first sentence by striking 'or a <u>violation</u> under section 43(a) [<u>1125(a)</u>],' and inserting 'a <u>violation</u> under section 43(a) [<u>1125(a)</u>], or a <u>willful violation</u> under section 43(c) [<u>1125(c)</u>].'") (emphasis added).

"It is well settled that 'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" <u>Duncan v. Walker</u>, 533 U.S. 167, 173 (U.S. 2001)

(citations omitted); see Russello v. United States, 464 U.S. 16,
23 (U.S. 1983) ("Had Congress intended to restrict § 1963(a)(1)
to an interest in an enterprise, it presumably would have done so
expressly as it did in the immediately following subsection
(a)(2)."). Thus, the plain language of the statute indicates
that willfulness is a prerequisite only when recovery of profits
is sought for a violation of section 1125(c) – which prescribes
remedies for dilution of famous marks. Although trademark
dilution is one of Plaintiffs' claims, their infringement and
counterfeiting claims are brought under section 1125(a) of the
Act, for which no showing of willfulness is necessary to recover
profits.

The Sahaya Defendants correctly point out that the Second
Circuit has, prior to the Trademark Amendments Act of 1999,
required a showing of bad faith or intentional misconduct to
recover profits for infringement and counterfeiting claims. See,
e.g., International Star Class Yacht Racing Association v. Tommy
Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996); George
Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1540 (2d Cir.
1992). However, the Second Circuit has not addressed this issue
since the 1999 amendment to 15 U.S.C. 1117(a). Without reason to
believe that Congress intended to preserve the Second Circuit

rule that preceded the 1999 amendment, the plain language of the statute should govern.[9]

Two Courts of Appeals – for the Fifth and the Third Circuit – have addressed this question since the 1999 amendment to 15 U.S.C. § 1117. In Quick Technologies, Inc. v. Sage Group PLC, the Fifth Circuit acknowledged that willful infringement "is an important factor which must be considered when determining whether an accounting of profits is appropriate," but concluded that "in light of the plain language of § 1117(a), however, we

---

[9]The Sahaya Defendants rely on a recent case from this district that applied the old Second Circuit rule, requiring a showing of willfulness for recovery of profits, despite the 1999 amendment. See Mastercard International Inc. v. First National Bank of Omaha, Inc., 02 Civ. 3291/03 Civ. 707 (DLC), 2004 WL 326708 (S.D.N.Y. Feb. 23, 2004). In Mastercard, Judge Cote stated that when Congress amended the statute to include a "willful violation under section 1125(c)," but left unchanged the prior language providing a remedy for "a violation under section 1125(a), "[i]t may be presumed that Congress's inclusion, without alteration, of the language concerning Section 1125(a) incorporates the existing judicial interpretation of that language." Id. at *11. However, as Plaintiffs argue, there was no consistent judicial interpretation of the statute across federal courts at the time of the 1999 amendment. Pls.' Reply, 8. See, e.g., International Star, 80 F.3d at 753 (requiring a showing of bad faith for recovery of profits); Frisch's Restaurants v. Elby's Big Boy, 849 F.2d 1012, 1015 (6th Cir. 1988) (same); SecuraComm Consulting Inc. v. Securacomm Inc., 166 F.3d 182, 190 (3d Cir. 1999) (same). Contra Roulo v. Russ Berrie & Co., 886 F.2d 931, 941 (7th Cir. 1989) ("Other than general equitable considerations, there is no express requirement that the...infringer wilfully infringe the trade dress to justify an award of profits"); Burger King Corp. v. Mason, 855 F.2d 779, 781 (11th Cir. 1988) ("Nor is an award of profits based on either unjust enrichment or deterrence dependent upon a higher showing of culpability on the part of defendant, who is purposely using the trademark."). Thus, there was no clear judicial consensus for Congress to incorporate when it enacted the 1999 amendment.

decline to adopt a bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits." 313 F.3d 338, 347-49 (5th Cir. 2003). Instead, the Fifth Circuit adopted a multi-factor test to determine whether an award of profits is appropriate in a trademark infringement case, looking at: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." Id. at 349 (citing Pebble Beach Co. v. Tour 18 Ltd., 155 F.3d 526, 554 (5th Cir. 1998)).

In the time since the instant case became fully briefed, the Third Circuit has also recognized that the 1999 amendment to 15 U.S.C. § 1117(a) has "superseded" the "bright-line willfulness requirement" that had existed in that Circuit. Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 171, 174 (3d Cir. 2005); compare SecuraComm, 166 F.3d at 190 (pre-1999 amendment case requiring a showing of bad faith to recover profits). In Banjo Buddies, the Third Circuit held that "willfulness is an important equitable factor but not a prerequisite" to an award of profits for trademark infringement, because "[t]he plain language of the amendment indicates that Congress intended to condition monetary awards for § 43(c) violations, but not § 43(a) violations, on a

showing of willfulness." 399 F.3d at 171, 174. The Third Circuit embraced the Fifth Circuit's multi-factor test detailed above. Id. at 175-76; see supra, at 26.

Adopting this approach, the Court holds that although willfulness is not a prerequisite to the recovery of profits for infringement and counterfeiting, it continues to function as an equitable consideration under the Fifth Circuit's multi-factor test. Thus, the Court will be unable to determine whether or not Plaintiffs may recover the Sahaya Defendants' profits until a jury resolves the factual issue of whether or not the Sahaya Defendants' infringement was willful. Plaintiffs' motion for summary judgment as to these Defendants' profits is therefore denied.

There is no outstanding issue, however, as to the willfulness of the Enis and Rosner Defendants. See supra, at 6, 15-18. The Court therefore orders an accounting of the Enis and Rosner Defendants' profits, and refers this case to Magistrate Judge Ellis to oversee the accounting process and issue a report and recommendation at its conclusion.

### (b) Treble Profits under 15 U.S.C. § 1117(b)

Plaintiffs contend that they are entitled to treble profits from the Enis and Rosner Defendants with respect to their counterfeiting and infringement claims, because it is beyond dispute that these Defendants' illegal conduct was willful.

15 U.S.C. § 1117(b) provides as follows:

> [T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title...that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, in connection with the sale, offer for sale, or distribution of goods or services. 15 U.S.C. § 1117(b).

The language of the statute indicates that absent extenuating circumstances, "federal courts are expected, and not merely authorized" to grant treble profits or damages, whichever is greater, in cases of willful infringement. <u>Fendi</u>, 642 F. Supp. at 1147 (holding that "treble damages and attorneys' fees are particularly appropriate here in view of the undisputed evidence that defendants deliberately arranged to first obtain counterfeit goods and then sell them as genuine items to an innocent public").[10]

However, a determination of extenuating circumstances can be made only on a "case by case basis." <u>Id</u>. Where the defendant is an "unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family," treble damages may be inappropriate; although Congress has indicated that "it will

---

[10] <u>Fendi</u> focused on damages rather than profits; this distinction is irrelevant to the case's holding because as the <u>Fendi</u> court recognized, 15 U.S.C. § 1117(b) permits treble recovery of either profits or damages.

be a rare case in which a defendant who has trafficked in goods or services using a mark that he or she knows to be counterfeit can show that he or she should not be assessed treble damages." Id. (citing Joint Explanatory Statement, 130 Cong. Record H. 12,076 at 12,083 (Oct. 10, 1984)).

The Court refers this case to Magistrate Judge Ellis to hold whatever proceedings he believes necessary, and then report and recommend whether or not an award of treble profits from the Enis and Rosner Defendants would be appropriate under the circumstances of the instant action.[11]

### (c)  Attorneys Fees

The Lanham Act provides that "[t]he Court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  Willful infringement constitutes an "exceptional" circumstance.  Bambu Sales, 58 F.3d at 854. Thus, the Court awards Plaintiffs attorney fees from the Enis and Rosner Defendants, and refers the case to Magistrate Judge Ellis to determine an appropriate sum.

---

[11]The Court need not reach Plaintiffs' alternative request for statutory damages pursuant to 15 U.S.C. § 1117(c).

## IV. Conclusion

For the reasons stated above, the Court grants default judgment against Defendants MHK and Transfund on all of Plaintiffs' claims; grants summary judgment against Defendant Enis and the Rosner Defendants on all of Plaintiffs' claims; and grants summary judgment on the issue of liability against the Sahaya Defendants on all claims except Plaintiffs' common law infringement claim.

The Court refers this case to Magistrate Judge Ellis for a report and recommendation on (1) an accounting of the Enis and Rosner Defendants' profits, (2) whether the award of the Enis and Rosner Defendants' profits should be trebled, and (3) a reasonable sum of attorney fees that Plaintiffs should receive from the Enis and Rosner Defendants.

As agreed to by the parties, the issue of the Sahaya Defendants' willfulness will be tried before a jury. Plaintiffs and the Sahaya Defendants are directed to submit a joint pre-trial order, proposed voir dire questions, and requests to charge by August 15, 2005.

SO ORDERED.

Dated:     New York, New York
           July 13, 2005

                              _Kimba M. Wood_
                              Kimba M. Wood
                              United States District Judge

31