**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

NIKE, INC., ADIDAS-SALOMON A.G., et al.,

                    Plaintiffs,

- against -

TOP BRAND CO., et al.,

                      Defendants.

**CORRECTED REPORT AND RECOMMENDATION**

**00 Civ. 8179 (KMW) (RLE)**

**To the HONORABLE KIMBA M. WOOD, U.S.D.J.:**

## I. BACKGROUND

Plaintiffs, Nike, Inc., Adidas-Salomon A.G., Adidas International, B.V., and Adidas America, Inc. ("Nike and Adidas"), brought suit in this trademark infringement case against three groups of defendants: 1) MHK Products, Inc.; Transfund Capital, LLC; president of MHK and Transfund, Jay Enis (the "Enis Defendants"); 2) Rosson Sport, Inc.; Top Brand Company; Global Surplus, Inc.; president of Global, Vincent Militano; and president of Rosson and Top Brand, Hanoch Rosner (the "Rosner Defendants"); and 3) Mark Stevens Company and its president, Mark Sahaya (the "Sahaya defendants"). The case has lasted over five years and taken many turns. On November 17, 2000, District Judge Kimba M. Wood granted a preliminary injunction enjoining the defendants from continuing their infringing actions. Order for Preliminary Injunction, Expedited Discovery and Impoundment, November 17, 2000. On July 3, 2003, the undersigned granted sanctions against the Enis Defendants and their attorneys for discovery abuses. **Nike, Inc. v. Top Brand Co.**, 216 F.R.D. 259, 261 (S.D.N.Y. 2003). Most recently, on July 13, 2005, Judge Wood granted default judgment against defendants MHK and Transfund on all claims, summary judgment against the Enis and Rosner Defendants on all claims, and

summary judgment on the issue of liability against the Sahaya defendants. **Nike, Inc. v. Top Brand Co.**, 2005 WL 1654859, at *12 (S.D.N.Y. July 13, 2005). Judge Wood then referred the case to the undersigned for a Report and Recommendation on the following questions: 1) an accounting of the Enis and Rosner Defendants' profits, 2) whether the award of the Enis and Rosner Defendants' profits should be trebled, and 3) a reasonable sum of attorney's fees that plaintiffs should receive from the Enis and Rosner Defendants. **Id**.

The facts of this case and its procedural history are aptly summarized in Judge Woods' latest order. **Nike, Inc.**, 2005 WL 1654859, at *1. Familiarity with that order is assumed here. In addition, this Report and Recommendation relies on the submissions Nike and Adidas filed in support of this application for damages and attorney's fees. Plaintiffs' Nike., Inc., Adidas-Salomon A.G., Adidas International, B.V. and Adidas America, Inc.'s Memorandum of Law in Support of Damages, Attorneys' Fees and Costs ("Pl. Mem."); Declaration of Martin Feinberg in Support of Plaintiffs' Application for Attorneys' Fees ("Feinberg Decl."). For the following reasons, I recommend that the following award for damages, attorney's fees, and expenses be **GRANTED**: that the Enis Defendants pay $12 million in statutory damages to Nike and $5 million to Adidas; that the Rosner Defendants pay $4 million in statutory damages to Nike and $17 million to Adidas; that the Enis Defendants pay $95,865.33 in fees and $31,800.05 in expenses; and that the Rosner Defendants pay $88,424.39 in fees and $31,800.05 in expenses.

## II. DISCUSSION

A.    **Statutory Damages in Lieu of Profits**

When profits are known, a plaintiff can "recover (1) defendant's profits, (2) any damages

sustained by the plaintiff, . . . (3) the costs of the action,"15 U.S.C. § 1117(a); and the profits may be trebled. 15 U.S.C. § 1117(b). Alternatively, the statute provides for statutory damages up to "$1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" where there is a finding that infringement was willful. 15 U.S.C. § 1117(c). Congress added this provision in 1996 through the Anticounterfeiting Consumer Protection Act, specifically to address a situation where defendants have not provided sufficient records of profits for a plaintiff to establish actual damages. *See* **Gucci Am., Inc. v. Duty Free Apparel, Ltd.**, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (*citing* S. Rep. No. 104-177 at 10 (1995)); **Sara Lee Corp. v. Bags of New York, Inc.**, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) (stating "nondisclosure is a key reason for statutory damages"). Nike and Adidas have elected to receive statutory damages under 15 U.S.C. § 1117(c).[1]

As is detailed in this Court's opinion and order imposing sanctions against them and their counsel for discovery abuses, the Enis Defendants have provided little evidence defining actual sales and profits throughout this litigation and have, in fact, taken steps to conceal information about their infringing activities from the plaintiffs and the Court. **Nike, Inc.**, 216 F.R.D. at 261-67. Similarly, as Judge Wood recognized in her summary judgment order, the Rosner Defendants produced documents to the plaintiffs which appear to have been forged, and failed to oppose plaintiffs' Local Rule 56.1 statement and motion for summary judgment. **Nike, Inc.**, 2005 WL 1654859, at *2. The lack of information about any of the defendants' sales and profits, and the suspect nature of any information that was provided, make statutory damages particularly

---

[1]Although Judge Woods' order required an accounting of profits and a determination of whether they should be trebled, plaintiffs have opted for statutory damages in lieu of profits. Because this alternative was sought in their motions, the Court considers a recommendation on statutory damages within the scope of the referral.

appropriate for this case.

Nike and Adidas ask the Court to award the maximum available statutory damages. Pl. Mem. at 10. The statute does not provide any specific guidance as to the amount of statutory damages to award in any given case, so courts have looked both to the compensatory and punitive aspects of the actual damages sections of the trademark infringement statute. **Sara Lee Corp.**, 36 F. Supp. 2d at 165-66 (*citing* 15 U.S.C. § 1117(a) and (b)). Thus, the amount of defendants' likely profits from their infringement, the possibility of deterrence, and the need for redress of wrongful conduct are appropriate factors to consider. Here, the size of the defendants' infringing operations, which led to the production of millions of infringing goods produced, the willfulness of their conduct, and their behavior in this litigation all weigh towards a grant of the maximum in statutory damages. *See* **Phillip Morris USA Inc. v. Marlboro Express**, 2005 WL 2076921, at *8 (E.D.N.Y. Aug. 26, 2005) (awarding $1,000,000 per counterfeit mark, for a total of $4,000,000, because of defendants' willfulness, size of their potential profit (over $4,500,000), and the need for substantial deterrent to future misconduct in case of production of counterfeit cigarettes); **Sara Lee Corp.**, 36 F. Supp. 2d at 169-70 (awarding $750,000 per mark per type of good given the defendants' high level of willfulness and their repeated efforts to defy and mislead the court, where the size of operations was at least $230,000 in counterfeit goods).

Therefore, the damages recommended here are the maximum of $1,000,000 per mark per type of good, as plaintiffs have requested. Nike and Adidas have outlined the amount of goods produced and trademarks infringed in their statement of undisputed facts accompanying the summary judgment motion. The Enis Defendants produced an unknown quantity of three counterfeit goods (t-shirts, fleece sweatshirts, and polo shirts) each bearing four Nike trademarks,

warranting $12 million in statutory damages. Pl. Mem. at 13. The Enis Defendants produced one counterfeit good (shirts) bearing five Adidas trademarks, warranting $5 million in statutory damages. **Id**. I therefore recommend that the Enis Defendants pay $17 million total in statutory damages.

The Rosner Defendants sold at least 1.2 million counterfeit t-shirts bearing the same four Nike trademarks as the Enis Defendants' goods, warranting $4 million in statutory damages. **Id**. The Rosner Defendants also sold counterfeit soccer balls bearing six adidas marks, sneakers bearing six adidas marks, and t-shirts bearing five adidas marks, warranting $17 million in statutory damages. **Id**. at 13-14. I therefore recommend that the Rosner Defendants pay $21 million total in statutory damages.

**B.** **Attorney's Fees and Expenses**

The Supreme Court has held that attorney's fees are not to be awarded automatically, but a court may do so in its discretion for purposes of compensation and deterrence. ***See* Fogerty v. Fantasy, Inc.**, 510 U.S. 517, 535 n.19 (1994); **Knitwaves, Inc. v. Lollytogs, Ltd.**, 71 F.3d 996, 1011 (2d Cir. 1995). Generally, in trademark infringement cases, an award of attorney's fees is warranted where infringement was willful. ***See* Kepner-Tregoe, Inc. v. Vroom**, 186 F.3d 283, 289 (2d Cir. 1999). While there has been some question about the availability of an award of attorney's fees where statutory damages are given, courts have found both appropriate in such "exceptional cases" of willful infringement. **Silhouette Int'l Schmied AG v. Vachik Chakhbazian**, 2004 WL 2211660, at *3 (S.D.N.Y. Oct. 4, 2004) (listing cases); **Sara Lee Corp.**, 36 F. Supp. at 170 (awarding both without comment). ***Compare with* Gucci Am., Inc.**,

315 F. Supp. at 522-23 (refusing award of attorney's fees in addition to statutory damages "which are available '*instead* of actual damages'" (*quoting* 15 U.S.C. § 1117(c) (emphasis in case)). Here, Judge Wood has already found that both defendants' infringement in this case was willful. **Nike, Inc.**, 2005 WL 1654859, at *6-7. Therefore, an award of attorney's fees and expenses is warranted in this case.

Under the lodestar approach, the estimated fee is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable rate. **Grant v. Martinez**, 973 F.2d 96, 99 (2d Cir. 1992) (*citing* **Blanchard v. Bergerson**, 489 U.S. 87, 94 (1989)). Although there is a "strong presumption" that the lodestar is reasonable, the calculated amount may be adjusted, depending on such considerations as the novelty and difficulty of the issues concerned and the experience and ability of the attorneys. *See* **Toys "R" Us, Inc. v. Abir**, 1999 WL 61817, at *1-2 (S.D.N.Y. Feb. 10, 1999).

Nike and Adidas have requested an award of $127,820.44 in fees and $42,400.06 in expenses from the Enis Defendants (total of $170,220.50), and $117,899.18 in fees and $42,400.06 in expenses (total of $160,299.24) from the Rosner Defendants, for a total of $245,692.62 in fees and $84,800.11 in expenses (overall total of $330,519.73). Feinberg Decl. ¶ 4, 7.

1. **Lodestar Analysis**

In determining a reasonable hourly rate, the court should consider the rates for legal services "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." **Gierlinger v. Gleason**, 160 F.3d 858, 882 (2d Cir. 1998)

(*quoting* **Blum v. Stevenson**, 465 U.S. 886, 895 n.11 (1984)).  In addition, the court may also rely on its own knowledge of hourly rates charged in private firms to determine what is reasonable in the relevant community.  **Miele v. New York State Teamsters Conf. Pens. & Retirement Fund**, 831 F.2d 407, 409 (2d Cir. 1987).  For purposes of determining the fee, the relevant community is the judicial district in which the trial court sits.  **In re Agent Orange Prod. Liability Litig.**, 818 F.2d 226, 232 (2d Cir. 1987).

In the Second Circuit, a party seeking an award of attorney's fees must support its application by submitting time records that detail "for each attorney, the date, hours expended, and the nature of the work done."  **New York State Assoc. for Retarded Children, Inc. v. Carey**, 711 F.2d 1136, 1154 (2d Cir. 1983).  When determining the reasonableness of the hours expended by counsel, the court considers "the value of the work product of the specific expenditures to the client's case."  **Luciano v. Olsten Corp.**, 109 F.3d 111, 116 (2d Cir. 1997) (*citing* **Lunday v. City of Albany**, 42 F. 3d 131, 133 (2d Cir. 1994); **DiFilippo v. Morizio**, 759 F.2d 231, 235 (2d Cir. 1985)).  Morever, the court should reduce the lodestar calculation by any amount of time it deems unreasonable.  *See* **Quarantino v. Tiffany & Co.**, 166 F.3d 422, 425 (2d Cir. 1998) (*citing* **Hensley v. Eckerhart**, 461 U.S. 424, 434 (1983)).

In support of their application for fees and expenses, Nike and Adidas have submitted a declaration which describes the attorneys who worked on the case, their rates and hours, the projects they worked on, and their range of experience.  Feinberg Decl. ¶ 13-26.  Feinberg has also attached bills for professional services and costs, expenses, and disbursements.  **Id**.  ¶ 27-28, Exhs. D, E.  The fee application covers the following work performed by counsel: the complaint,

document requests, interrogatories, a motion for preliminary injunction and hearing, depositions, document analysis, review and follow-up of subpoenaed materials, conferences with clients, a motion for summary judgment, this fee application, and a brief on statutory damages. **Id**. ¶ 9.

It is important to note what Nike and Adidas have excluded from this fee application. As noted above, earlier in the litigation, this Court granted sanctions against the Enis Defendants for discovery abuses. **Nike, Inc.**, 216 F.R.D. 259. Nike and Adidas made an application for fees related to that order. Here, Nike and Adidas have not included any fees or expenses requested in that application. Feinberg Decl. ¶ 4. At the same time, Nike and Adidas have not sought to hold the Enis and Rosner Defendants jointly and severally liable for all the defendants' acts, as the law allows, but have instead divided the amount in thirds among the three groups of defendants, and in this application have specifically excluded any fees associated with the Sahaya defendants. **Id**. ¶ 4, 6.

      **a.**      **Reasonable Rates**

The rates charged by the attorneys who worked on this case are on the high end of what courts have approved in this district, but given the attorneys' extensive experience, are reasonable. For example, the highest billing attorneys and their rates are: L. Ederer ($325-425), I. Sacks, ($400-450), S. Blau ($400), M. Feinberg ($250-375), and M. Levine ($325-350). **Id**. ¶ 24. Ederer has over twenty-three years of practice experience, with a focus on litigation in the area of intellectual property. **Id**. ¶ 17. I. Sacks has been practicing over thirty years and has an extensive track record in the litigation of intellectual property and antitrust matters, having been counsel of record in over eighty reported decisions. **Id**. ¶ 23(a). Blau has been practicing over

twenty-eight years and is an experienced trial advocate and appellate attorney. **Id**. ¶ 23(h). Levine and Feinberg have both been practicing over fifteen years. **Id**. ¶ 21, 23(b).

The rates listed here and others charged by counsel in this case are consistent with those approved by courts in this district, given the attorneys' many years of experience. ***See* **Westchester Disabled on the Move v. Village of Larchmont**, 2000 WL 33764992, at *2 (S.D.N.Y. Feb. 2, 2001) (***citing* Marisol A. v. Giuliani**, 111 F. Supp. 2d 381 (S.D.N.Y. 2000) (finding a reasonable rate scale of: $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-250 for attorneys with seven to nine years of experience, $180-200 for attorneys with four to six years of experience, and $130-150 for attorneys with one to three years of experience)); **Weinberger v. Provident Life and Cas. Ins. Co.**, 1999 WL 608790, at *2 (S.D.N.Y. Aug. 12, 1999) (finding $225-300 reasonable for partners and senior attorneys, and $200 reasonable for more junior attorneys).

      b.      **Reasonable Hours**

In determining whether the hours claimed by counsel were "reasonably expended," **Hensley**, 461 U.S. at 433, the court should not engage in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained." **Grant**, 973 F.2d at 99. Rather, the court must evaluate "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." **Id**. Furthermore, it is within this Court's discretion to determine whether or not the work of an additional attorney is reasonable when a firm bills for multiple attorneys' work on the same project. **Luciano**, 109 F.3d at 117 (approving district court's reduction of compensable hours for second trial counsel where district court

found that second counsel had questioned one minor witness and otherwise had not participated meaningfully at trial).

The litigation spans five years and involved the work of twenty attorneys and twelve paralegals. **Id**. ¶ 13. The case was procedurally difficult and discovery was complicated because some of the defendants defaulted. However, the hours claimed here are unreasonably high, particularly because many attorneys worked on each project.

The partners who worked on each project and the hours billed are as follows:

Ederer billed a total of 119.40 hours acting as lead counsel. Feinberg Decl. ¶ 18. He was involved in the preparation of the complaint, document requests and interrogatories, motion for preliminary injunction and hearing, preparation for depositions and analysis of documents, conducting two depositions, the preparation, review, and follow-up of subpoenaed materials, and client conferences. **Id**.

Feinberg oversaw the investigation and discovery phases of the case, assisted in the preparation of practically all the projects covered by this fee application, and supervised four paralegals, billing a total of 142.61 hours. **Id**. ¶ 22. He was involved with the complaint, document requests and interrogatories, motion for preliminary injunction and hearing, preparation for depositions and analysis of documents, preparation and review of subpoenaed materials, motion for summary judgment, this fee application and statutory damages brief, and client conferences. **Id**.

Sacks billed a total of 81.63 hours in connection with the preparation of an amended complaint, client conferences, motion for summary judgment, this fee application, and a brief on

statutory damages.  **Id**. ¶ 23(a).

Levine billed 27.76 hours in the preparation, review, and follow-up of subpoenaed materials, client conferences, and the preparation of a summary judgment motion.  **Id**. ¶ 23(b).

Associates, senior associates, and of counsel attorneys also worked significant hours on the case in the following capacities:

Maltbie billed 90.28 hours working on the preparation of document requests and interrogatories, preparation of motion for preliminary injunction and hearing, preparation for depositions and analysis of documents, and the preparation, review and follow-up of subpoenaed materials.  **Id**. ¶ 20.

Blau billed 46.5 hours in the preparation, review, and follow-up of subpoenaed materials and the preparation of a summary judgment motion.  **Id**. ¶ 23(h).

Friedman billed 45.63 hours in connection with investigations, preparation of the complaint, document requests and interrogatories, depositions, analysis of documents and preparation, review, and follow-up of subpoenaed materials.  **Id**. ¶ 23(c).

Bard billed 180.44 hours in the preparation of the complaint, document requests and interrogatories, motion for preliminary injunction and hearing, depositions, document analysis, conducting one deposition, and the preparation, review, and follow-up of subpoenaed materials.  **Id**. ¶ 23(d).

Morales billed 127 hours in preparing the motion for summary judgment.  **Id**. ¶ 23(e).

M. Sacks billed 40 hours in preparation of the fee application and statutory damages

brief.  **Id**. ¶ 23(f).

Corliss billed 114.5 hours in the preparation of the motion for summary judgment.  **Id**. ¶ 23(g).

Schoenberg billed 14.26 hours assisting in the preparation of the complaint and preparation for depositions and document analysis.  **Id**. ¶ 23(i).

Jason billed 30.58 hours in preparation of the complaint, motion for preliminary injunction and hearing, and preparation for depositions and analysis of documents.  **Id**. ¶ 23(j).

Laskin billed 44.93 hours assisting in the preparation of the complaint, preparation of document requests and interrogatories, motion for preliminary injunction and hearing, depositions, analysis of documents and preparation, review, and follow-up of subpoenaed materials.  **Id**. ¶ 23(k).

Yoon billed 71.33 hours assisting in deposition preparation and analysis of documents.  **Id**. ¶ 23(l).

As is obvious from this listing, usually more than two attorneys invested significant work in each project, in most cases, many more than just a partner and an associate: seven attorneys were involved in the preparation, review, and follow-up of subpoenaed materials (Ederer, Levine, Maltbie, Blau, Friedman, Bard, Laskin); six in the summary judgment motion (Feinberg, Sacks, Levine, Blau, Morales, Corliss); eight in the complaint and amended complaint (Ederer, Sacks, Feinberg, Friedman, Bard, Schoenberg, Jason, Laskin); five in the preliminary injunction motion and hearing (Ederer, Feinberg, Maltbie, Bard, Laskin); six in the document requests and interrogatories (Ederer, Feinberg, Maltbie, Friedman, Bard, Laskin); nine in the depositions,

including preparation and document analysis (Ederer, Feinberg, Maltbie, Friedman, Bard, Schoenberg, Jason, Laskin, Yoon); three in the fee application and statutory damages brief (Feinberg, I. Sacks, M. Sacks); and four in client conferences (Ederer, Feinberg, Sacks, Levine).

The use of two attorneys is not problematic, *see* **McKever v. Vondollen**, 681 F. Supp. 999, 1002-03 (N.D.N.Y. 1988), and using multiple attorneys is not unreasonable *per se.* **Williamsburg Fair Hous. Comm. v. Ross-Rodney Housing Corp.**, 599 F. Supp. 509, 518 (S.D.N.Y. 1984) (finding the use of more than one attorney was justified in fair housing case). Multiple attorneys are allowed to recover fees on a case if they show that the work reflects the distinct contributions of each lawyer. **Kapoor v. Rosenthal**, 269 F. Supp. 2d 408, 414 (S.D.N.Y. 2003). *See* **Hutchinson v. McCabee**, 2001 WL 930842, at *3 (S.D.N.Y. Aug.15, 2001). The moving party, however, must demonstrate the need for each attorney's expertise. **Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.**, 277 F. Supp. 2d 323, 325 (S.D.N.Y. 2003) (*citing* **Hensley**, 461 U.S. at 437). Nike and Adidas have not met that burden here. While their submissions mention the expertise of each attorney, there is no explanation of the necessity of having from five to nine attorneys working on each project.

In **Sea Spray Holdings**, 277 F. Supp. at 325, the court found an application for 123.75 hours on one motion to dismiss to be "excessive on its face." Six attorneys and two legal assistants had billed for their services. **Id**. The court determined that the party had not met its burden of proving "that the services of all of these attorneys and assistants were necessary and reasonable" and reduced the party's fees by a fifteen percent "flat" reduction. **Id**. at 326. This case is even more excessive. The summary judgment motion is just one example. The

preparation of that motion alone apparently involved 241.5 hours of specified associate time, an unspecified amount of time from another associate, and an unspecified amount of time from three partners. The memorandum of law has eighteen pages of facts and two pages of the basic legal standard for summary judgment. Plaintiff's Memorandum of Law in Support of Their Motion for Partial Summary Judgment at 1-20. The remaining fourteen pages constitute the argument. **Id**. at 21-34. The memorandum briefly addresses the liability issues and does not include a detailed analysis of the **Polaroid** factors. **Id**. at 24 (*citing* **Polaroid Corp. v. Polarad Elec. Corp.**, 287 F.2d 491, 495 (2d Cir. 1961), and stating "A detailed analysis under **Polaroid** is not necessary here."). Instead, the memorandum focuses on remedies, **id**. at 25-34, including an 'in-the-alternative' argument asking for statutory damages in lieu of profits. **Id**. at 31-34. As many of the substantive legal issues had been discussed at other stages of the litigation, this was appropriate. However, the hours listed by counsel are not commensurate with this kind of memorandum.

Therefore, I find that a twenty-five percent reduction in the fees requested is warranted. This accounts for three factors: a large group of attorneys billed for the same projects, the hours billed appear excessive, and the form of counsel's submissions would make it onerous for the Court to separate out which attorney's hours were reasonable and which were duplicitous. ***See* Sea Spray Holdings**, 277 F. Supp. at 326.

    **c.**    **Expenses**

The expenses requested are $42,324.79 per defendant for the previous work in this litigation, and $150.53 in relation to this fee application. Feinberg Decl. ¶ 12, 28, Exh. D. These expenses will also be reduced by twenty-five percent to correspond with the correction for

excessive hours.  *See* **MZH AG v. Indus.-Trade Unitary Enter. "Belaya Russ"**, 2003 WL 22173074, at *2 (S.D.N.Y. Sept. 22, 2003) (reducing both fees and expenses by one-third for excessive hours).  Furthermore, where the documentation of expenses is inadequate, the court "may reduce the awards accordingly."  **Hensley**, 461 U.S. at 433.  *See* **Fund Com'n Service, II, Inc. v. Westpac Banking Co.**, 1996 WL 469660, at *7 (S.D.N.Y. Aug. 16, 1996); **N.S.N. Int'l Indus. N.V. v. E.I. Du Pont De Nemours & Co.**, 1996 WL 154182, at *5 (S.D.N.Y. Apr. 3, 1996).

While Nike and Adidas have included all the invoices billed to their client, there is no itemization of expenses.  Feinberg Decl., Exh. D.  As the Court has found excessive hours, it is likely that excessive expenses have also been listed.  Given both the excessive hours and the difficulty of attributing the expenses to a particular task without examining each invoice, the expenses will be reduced by twenty-five percent, for a total of $31,800.05 per defendant.

Therefore, I recommend the following award for fees and expenses: $95,865.33 in fees and $31,800.05 in expenses to be paid by the Enis Defendants (for a total of $127,665.38), and $88,424.39 in fees and $31,800.05 in expenses to be paid by the Rosner Defendants (for a total of $120,224.44).

### III. CONCLUSION

Given the foregoing analysis, I recommend that the following award for damages, attorney's fees, and expenses be **GRANTED**: that the Enis Defendants pay $12 million in statutory damages to Nike and $5 million to Adidas; that the Rosner Defendants pay $4 million in statutory damages to Nike and $17 million to Adidas; that the Enis Defendants pay $95,865.33 in

in fees and $31,800.05 in expenses; and that the Rosner Defendants pay $88,424.39 in fees and $31,800.05 in expenses.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs.**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: February 27, 2006**
**New York, New York**

**Respectfully Submitted,**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

For Plaintiffs
Martin J. Feinberg
Dreier LLP
499 Park Avenue
New York, NY 10022
Fax: 212-328-6101

16

<u>For Defendants</u>
Samuel Rosenberg
Meissner, Kleinberg & Finkel
275 Madison Avenue Suite 1000
New York, NY 10016
Fax: 212-689-0252

Marilyn Neiman
Levisohn, Berger & Langsam
805 Third Avenue
19th Fl.
New York, NY 10022
Fax: 212-486-0323

Jay Enis
4430 Prairie Avenue
Miami Beach, Fl. 33140